# THE BACKUS PORTABLE STEAM HEATER COMPANY *v.* SIMONDS.

EQUITY PRACTICE ; NECESSARY PARTIES; PERSONAL SERVICE, WHEN NECESSARY ; EQUITY JURISDICTION ; CHANGE IN PUBLIC OFFICE.

1.  To a suit in equity for the cancellation and surrender of an alleged fraudulent assignment of a patent and to expunge such assign-ment from the records of the Patent Office, the parties by whom and to whom the assignment was made as well as the Commis-sioner of Patents are necessary parties.

2.  The rights involved in such a suit are strictly *in personam*, and personal service within the jurisdiction in which the suit is brought upon the defendant who made and the defendant who received the assignment, is necessary to give the court juris-diction.

3.  Such a case does not come within the meaning of R. S. D. C., Sec. 787, allowing the substitution of publication for personal service in certain cases therein enumerated.

4.  If service of process is had in such a case on the Commissioner of Patents only, the court cannot assume jurisdiction over the entire subject matter and decree that the assignment be ex-punged from the records of the Patent Office ; and no consent or acquiescence of the Commissioner of Patents can give the court jurisdiction.

5.  Where pending a suit in equity against a Commissioner of Patents there is a change in the incumbency of the office, a decree . against the defendant after his retirement from office, would not bind his successor ; and the court is bound to take judicial notice of the change in office.

No. 103.  Submitted November 18, 1893.—Decided February 5, 1894.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia, holding an equity term, dismissing a bill for the cancellation and sur-render of an alleged fraudulent assignment of a patent and to expunge the same from the records of the Patent Office. *Affirmed.*

The COURT in its opinion stated the case as follows:

The bill in this case was filed on the 16th of November, 1891.   The plaintiff is the Backus Portable Steam Heat-ing Company, a corporation formed under the laws of the

State of New York; and the defendants against whom the bill was filed are William E. Simonds, late Commissioner of Patents of the United States, having his official residence in the city of Washington, and Harvey L. Baldwin and Rodney M. Whipple, described in the bill, as " now or late residing at Chicago, in the State of Illinois."

It is alleged in the bill, that the plaintiff company is, and was at the time of the transaction complained of, the owner of several valuable letters patent, issued by the United States, for improved heaters and methods of heating; that the defendant Whipple was, in February, 1890, duly appointed by the board of directors of the company, general agent for the territory of certain Western States, with an office in the city of Chicago, with power to make contracts, subject to the approval of said board of directors. That this authority was revoked by said board of directors, on the 9th of September, 1890, by a resolution of said board, and that due notice of such revocation was given to said Whipple immediately thereafter. It is then alleged, in effect, that Whipple and the defendant Baldwin fraudulently conspired together to injure and defraud the plaintiff, and that Whipple, without any authority whatever for so doing, on the 8th of Sept., 1890, executed an assignment, in the name of the plaintiff company, to Baldwin, of certain rights in and to the letters patent of the United States, the property of the plaintiff, the recorded titles to which were, prior to said fraudulent assignment, in the name of the plaintiff company. That, in pursuance of this fraudulent conspiracy, Baldwin and Whipple recorded this fraudulent assignment in the Patent Office of the United States, where it remains a cloud upon the plaintiff's title, and greatly impairs the value of such patent rights, and forms an impediment to the sale of the same.

Process was prayed against all the defendants. An injunction was also prayed against Whipple and Baldwin to prevent the exercise of any right under the alleged fraudulent assignment. It was next prayed, that the assignment

of the 8th of September, 1890, be declared fraudulent and void, and that the defendants Whipple and Baldwin be decreed to deliver up the said assignment to be cancelled.

It was further prayed, that William E. Simonds, Commissioner of Patents, be ordered and decreed to expunge the recording of said paper writing of September 8th, 1890, from the assignment records of the Patent Office; and for such other relief as may be equitable and right.

Process was issued, and returned served on the defendant Simonds, but not served on the defendants Whipple and Baldwin. Whereupon an order of publication was made against the two non-resident defendants, and was duly published. But no appearance was entered for them, nor was the bill taken *pro confesso* as against them. There was proof filed in the cause of the personal service of the order of publication, and a copy of the bill, on the two non-resident defendants, in Chicago, on the 21st and 22d of December, 1891. But no heed appears to have been paid to such service of notice by the defendants, nor was there any action of the court founded thereon.

The defendant Simonds, the Commissioner of Patents, appeared to the bill, and entered a demurrer thereto, and assigned as causes of demurrer the following: 1st. That the plaintiff had not made and stated in its bill any such case as entitled it to the relief prayed for. 2d. That it appeared from the bill that the two defendants therein named, Whipple and Baldwin, were not residents of this District, or otherwise within the jurisdiction of the court, and that the property rights involved in the suit were not situated within this District, and that the court was wholly without jurisdiction of said parties and property. 3d. That Whipple and Baldwin were necessary and indispensable parties, and that the relief prayed for by the plaintiff against the demurring defendant was wholly and necessarily dependent upon a decree of the court against said absent parties.

After thus demurring to the bill, instead of allowing the demurrer to stand, and taking the judgment of the court

thereon, the defendant Simonds, for some reason not disclosed to the court, withdrew the demurrer, and declined to make any defense against the bill at all; and allowed the bill to be taken against him *pro confesso;* and the cause was thence proceeded with *ex parte.* A commission was issued and testimony taken *ex parte;* and, after hearing, the bill was dismissed with costs. It was from that decree this appeal was taken from the special to the General Term of the Supreme Court of the District, and from thence transferred to this court under the act of Congress of Feb. 9, 1893.

*Mr. Hector T. Fenton* and *Messrs. Whitaker & Prevost* for the appellant.

THERE was no appearance for the appellees.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

Upon the case as above presented, there are only two principal questions that need be decided; and those are:

1. Whether Whipple and Baldwin are necessary or indispensable parties to this suit, and if so, whether there has been such service of process as was sufficient to subject them to the decree of the court.

2. If any part of the relief prayed for could be granted in their absence, whether any such partial decree can be passed and made effective as against the head of the Patent Office, though passed against the defendant Simonds, he no longer being in office.

1. Looking to the object and scope of the bill, and the prayers for relief based upon the allegations made therein, there would seem to be no doubt, upon the well established principles of equity procedure, that Whipple and Baldwin are necessary parties to the obtaining of any part of the relief prayed for by the plaintiff. The foundation for all the relief asked is the determination that the assignment of the 8th of September, 1890, is in fact fraudulent and void. Without this determination, there would be no ground for decreeing that the instrument operates as a cloud upon the

title of the plaintiff to the patent rights assigned, or that it should be surrendered to be cancelled; nor would there be any ground for ordering the Commissioner of Patents to expunge from the records of his office the record made there of the assignment.

Before any such decree could be made, it would be necessary to have the two non-resident defendants before the court. They have a right to be heard before any such decree could be made upon the subject matter of the bill, no matter how strong the allegations made against them, or how strong the effect of the evidence exhibited with the bill. The rights involved are strictly *in personam*, and no decree can affect them, unless it be founded upon the control of the parties by the court, after due process served, or their voluntary appearance. The case rests upon general principles of equity jurisprudence, and not upon any mere statutory regulation or procedure. *Wilson* v. *Sandford*, 10 How., 99. And it is within that class of cases where the parties not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience. *Shields* v. *Barrow*, 17 How., 130; *Barney* v. *Baltimore City*, 6 Wall., 280. An apt illustration of the principle, and of its working, is given by the learned judge in the case of *Shields* v. *Barrow*, just referred to. He said: "A bill to rescind a contract affords an example of this kind. For, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them, while it is set aside and the contracting parties restored to their former condition as to the others. We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are *completely separable* from the rights of those absent; otherwise the latter are indispensable parties."

We think it clear, therefore, upon the best established principles, that the two non-resident defendants were indispensable parties to a suit for the relief sought by the plaintiff and that no decree, declaring the assignment of the 8th of September, 1890, fraudulent and void, can be made in their absence.

It is urged, however, that the order of publication against them, the publication of that order, and the subsequent personal service of the order, with a copy of the bill, upon these defendants, in the city of Chicago, were sufficient process to subject them to the jurisdiction of the court; and that if they were thus made subject to the jurisdiction of the court, and to any decree that might be proper to be passed in the cause, it was error to dismiss the bill. In this contention we cannot agree.

In the case of *Hart* v. *Sansom*, 110 U. S., 151, 154, it is said by the Supreme Court, that " generally, if not universally, equity jurisdiction is exercised *in personam*, and not *in rem*, and depends upon the control of the court over the parties, by reason of their presence or residence, and not upon the place where the land lies 'in regard to which relief is sought. Upon a bill for the removal of a cloud upon title, as upon a bill for the specific performance of an agreement to convey, the decree, unless otherwise expressly provided by statute, is clearly not a judgment *in rem*, establishing a title in land, but operates *in personam* only, by restraining the defendant from asserting his claim, and directing him to deliver up his deed to be cancelled, or to execute a release to the plaintiff."

Such being the nature of the decree sought to be obtained in this case, and the defendants to be affected by that decree being non-residents, the question is, what nature of service will subject them to the jurisdiction of the court? This question would seem to be fully answered by the decisions of the Supreme Court of the United States.

In the case of *Pennoyer* v. *Neff*, 95 U. S., 714, it was held that process from the tribunals of one State *cannot run into*

*another State*, and summon a party there domiciled to re-
spond to proceedings against him; and publication of
process or of notice within the State in which the tribunal
sits cannot create any greater obligation upon him to ap-
pear. *Process sent to him out of the State*, and process pub-
lished within it, are equally unavailing in proceedings to
establish his personal liability. And it was further held,
that if the subject matter of the suit involved the determina-
tion of any personal liability of the defendant, he must be
brought within the jurisdiction of the court, by service of
process *within the State*, or by his voluntary appearance.
This case has been reaffirmed in several subsequent cases in
the same high tribunal.

There is no ground for contending that Section 787, Rev.
Stat. U. S., relating to the District of Columbia, has any
application to this case. That section provides that "in all
actions at law or in equity which have for their *immediate
object the enforcement or establishment* of any lawful right,
claim or demand, *to or against any real or personal property
within the jurisdiction of the court,*" publication may be sub-
stituted for personal service of process upon any defendant
who cannot be found. This provision does not embrace
proceedings of the nature of the present suit.

It would seem to be clear, therefore, that neither the pub-
lication of the order of court, nor the personal service of
such order on the non-resident defendants out of and be-
yond the jurisdiction of the court, will have the effect of per-
sonal service of process *within the jurisdiction*. Such notice
out of the jurisdiction will not confer on the court control of
the parties, and subject them to punishment for contempt
for disobedience of the orders of the court. Upon such for-
eign service merely the court cannot proceed as if the par-
ties were before it, and subject them to its decree passed *in
personam*.

2. It is contended, however, by the plaintiff, that notwith-
standing the two non-resident defendants are not before the
court, and subject to its decree, that the court could proceed

and decree the alleged fraudulent assignment to be expunged from the records of the Patent Office, as being there without authority, and declare the same null and void. But this assumes the truth of everything alleged in the bill, and which it is the right of these non-resident defendants to deny and controvert. It is clear, from what we have already said, that this contention cannot be maintained. It may be conceded, that so far as the Commissioner of Patents was concerned, there was jurisdiction in the court; but that jurisdiction was not complete over the subject matter, in the absence of the non-resident defendants; and no consent or acquiescence of the Commissioner of Patents could give the court jurisdiction over the subject matter. *Butterworth* v. *Hill*, 114 U. S., 128.

But apart from all this, there is another difficulty now existing in regard to the defendant Simonds, and that is, he is no longer Commissioner of Patents. He has been succeeded in that office by another person, who would not be bound by a decree made against his predecessor after he had retired from office. The present incumbent of the office could not be compelled, by any personal process against him, to execute a decree made against William E. Simonds, late Commissioner of Patents. This court is bound to take notice of the change in the incumbency of the office. It is a settled principle that courts of general jurisdiction are bound to take judicial notice of the heads of departments, and the principal officers of State; of the public seals; of the heads of bureaus in the departments, and of the judges of the United States courts, and of the United States marshals. 1 Greenl. Ev., Sec. 6. It has been expressly held, that the courts of the United States are bound to take judicial notice of the persons who occupy the position of the head of the Patent Office. *Railroad Co.* v. *Winans*, 17 How., 30.

Upon review of the whole case, we find no error; and the decree below dismissing the bill with costs must be affirmed with costs of appeal.

*Decree affirmed, with costs of appeal.*